IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**UNITED STATES of AMERICA,**

v.  Criminal No. 2:16cr124

**BENITEZ A. MOODY,**

   **Defendant.**

## OPINION & ORDER

This matter is before the Court on Defendant Benitez Auguarius Moody's ("Defendant's") Consolidated Motions for Post-Trial Franks Hearing and for Rule 29 Judgments of Acquittal or for Rule 33 New Trial ("Post-Trial Motion"). Doc. 62. For the reasons set forth below, the Court **DENIES** the Post-Trial Motion.

### I.   BACKGROUND

**A.   Procedural History**

On February 22, 2017, a federal grand jury returned a fifteen-count Superseding Indictment charging Defendant with (1) Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii); (2) Possession with Intent to Distribute Heroin, Cocaine and Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); (3) Possession with Intent to Distribute Heroin and Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); (4) Possession of Firearm in Furtherance of Drug Trafficking, in violation of 18 U.S.C. § 924(c)(1)(A); (5) Felon in Possession of Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); (6)–(13) Distribution of Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and

1

(b)(1)(C); (14) Possession with Intent to Distribute Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and (15) Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Doc. 31.

A four-day jury trial in the instant matter commenced on April 25, 2017. On April 28, 2017, at the conclusion of the jury trial, the jury rendered a verdict finding Defendant Guilty on Counts 1–5 and Not Guilty on Counts 6–15. Doc. 57. On May 12, 2017, Defendant filed the instant Post-Trial Motion. Doc. 62. On May 16, 2017, the Government responded in opposition to the Post-Trial Motion. Doc. 64. On May 22, 2017, Defendant filed a Motion for Extension of Time to File Reply Brief ("Motion for Extension"). Doc. 65. On May 24, 2017, the Court GRANTED the Motion for Extension. Doc. 67. On May 30, 2017, Defendant filed a Motion for an Additional Extension of Time to File Reply Brief ("Second Motion for Extension"). Doc. 68. On June 1, 2017, the Court GRANTED the Second Motion for Extension. Doc. 70. On June 2, 2017, Defendant replied in further support of the instant Post-Trial Motion. Doc. 71.

**B.     Factual Background**

"On March 24, 2016, Portsmouth Police Officers executed a search warrant on 1212 Lindsay Avenue, Portsmouth (alleged to be defendant's residence) and upon a 2004 BMW (alleged to be a vehicle of defendant's)." Doc. 63 at 2. "At trial, the search warrant and affidavit that provided the basis for searching Defendant's residence in the 1200 block of Lindsay Avenue were admitted into evidence." Doc. 64 at 3. On March 24, 2016, Detective Shelkey submitted an affidavit to the magistrate in support of the search warrants and included the following facts:

> In and around the month of October 2015 Portsmouth Police Department[']s Special Investigation Unit (SIU) Detectives and this affiant gained information from a Confidential Informant (CI) that Benitez Aguarius MOODY, a.k.a. "Lil T", described in section two of this affidavit was distributing [h]eroin and [c]ocaine from 12** Lindsay Ave Portsmouth, VA. SIU Detectives began conducting surveillance from October 2015 and have been doing so since March

2

24, 2016. During the past 6 months, this affiant and other members of the Portsmouth Police Department SIU have utilized Confidential Informants who have been up to and inside of 12** Lindsay Ave Portsmouth, VA and purchased quantities of heroin and cocaine from MOODY. During the investigation, controlled purchases have been conducted directly from 12** Lindsay Ave Portsmouth[,] VA and from a 2004 black in color BMW convertible displaying Virginia tags VLD-9617 re[-]registered to MOODY.

During these controlled purchases, these Confidential Informants have observed MOODY in possession [of] heroin, cocaine, and multiple firearms on and around his person. These Confidential Informants have observed Moody with cutting agents and digital scales that MOODY is utilizing to weigh different amounts of cocaine and heroin.

Within the past 24hrs this affiant and other members of the Portsmouth Police Department utilized a Confidential Informant who placed a telephone call to MOODY asking to purchase heroin from MOODY. MOODY arranged to meet the Confidential Informant in a pre[-]arranged location. During this controlled purchase, MOODY and other co-conspirators (two unidentified black females) were observed leaving from 12** Lindsay Ave Portsmouth, VA and surveilled traveling to the pre[-]arranged location and selling the Informant heroin. The heroin was recovered by members of the Portsmouth Police Department Special [I]nvestigations Unit, field tested and resulted positive for heroin.

A review of MOODY's criminal history reveals that MOODY has been charged with Possession of Marijuana, PWID Marijuana (felony), and Manufacture Possession of a controlled substance x2. MOODY's criminal history reveals that he is a 3 time convicted felon making it illegal for MOODY to possess a firearm.

Section 7:

These Confidential [I]nformant(s) have made controlled purchases of illegal narcotics as directed by this affiant and other members of the Portsmouth Police Department Special Investigations Unit. These informant(s) have provided information in the past that has been able to be proven true and accurate through this affiant or other members of the Portsmouth Police Department Special [I]nvestigations Unit. These [I]nformant(s) have provided information that has been proven truthful for other ongoing investigations. These [I]nformant(s) were shown photographs one of which was Benitez Aguarius MOODY who is described in section two of this affidavit. These Informant(s) positively identified MOODY as being the individual who distributes heroin and cocaine from inside of 12** Lindsay Ave Portsmouth, VA.

This affiant has been a Portsmouth Police Officer for over 14 years and has been assigned as a Detective to the Special Investigations Unit for over 3 years. This affiant has participated in the execution of drug-related search warrants and has

> been involved in arrests of several drug dealers and users. This affiant has completed training in the use, packaging and distribution of illegal drugs conducted by the Portsmouth Police Department, the DEA, and other local and state agencies.

Id. at 3–4 (quoting Doc. 63, Ex. 1 at 5–6). At trial, Defense counsel cross-examined Portsmouth Detective Beth Shelkey "about the affidavit, as well as witness Alexandra Hogan, who made the final controlled purchase of heroin referenced in the affidavit, 24 hours prior to Detective Shelkey's submission of the affidavit to the state magistrate." Id. Detective Shelkey explained that after the confidential informant, Ms. Hogan, called Defendant "to order up heroin and he agreed to meet her at a particular location, surveillance units who were watching the defendant's house told Detective Shelkey that the defendant and two black females departed the house and traveled to the pre-arranged meeting spot." Id. at 4 (citing Doc. 63, Ex. 3 at 4–5). Additionally, Detective Shelkey explained that

> it was her understanding based on what Ms. Hogan later relayed to her and the information received from her surveillance units, that "two black females . . . came to that location, directed by Mr. Moody where she was supposed to have met him, but the two black females showed up and delivered the narcotics there."

Id. at 5 (citing Doc. 63, Ex. 3 at 6). On cross examination, "Ms. Hogan testified that when she made the purchase, the defendant wasn't present, but rather, that he sent 'two girls' to deliver the drugs." Id. (citing Doc. 63, Ex. 4 at 3). Specifically, Ms. Hogan testified to the following:

> THE COURT: All right. How was it set up? What happened?
>
> A. HOGAN: I called him on the phone. When I got to the place – when I got to the place –
>
> THE COURT: Okay. You called him on the phone. You talked to him?
>
> A. HOGAN: I talked to him. He told me where to go.
>
> THE COURT: Do you know his voice?
>
> A. HOGAN: Yes. I have gotten up with him before. He told me where to go, and

he said, I'm sending somebody to you, and two girls pulled up in a vehicle.

Id. (quoting Doc. 63, Ex. 4 at 18; Doc. 64, Ex. 1 at 1.).

## II. LEGAL STANDARDS

To be entitled to a hearing pursuant to Franks v. Delaware, 438 U.S. 154, 155–56 (1978), commonly referred to as a Franks hearing, a defendant must make a "dual showing . . . which incorporates both a subjective and an objective threshold component." United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990). First, the defendant must "make[ ] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." Franks, 438 U.S. at 155–56 (quotations omitted); United States v. Jeffus, 22 F.3d 554, 558 (4th Cir. 1994) ("The defendant's burden [to establish cause for a Franks hearing] is a heavy one, since ample mechanisms already exist in pretrial stages of the criminal process to protect innocent citizens' rights."); United States v. Chavez, 902 F.2d 259, 265 (4th Cir. 1990) (holding that ambiguity or lack of clarity is insufficient to justify a Franks hearing).

Secondly, "the false information must be essential to the probable cause determination." Colkley, 899 F.2d at 300. If, "when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." Franks, 438 U.S. at 171–72. "Franks, thus serves to prevent the admission of evidence obtained pursuant to warrants that were issued only because the issuing magistrate was misled into believing that there existed probable cause." United States v. Friedemann, 210 F.3d 227, 229 (4th Cir. 2000), cert. denied, 531 U.S. 875 (2000). United States v. Akinkoye, 185 F.3d 192, 199 (4th Cir. 1999) (Franks hearing not required where probable cause existed apart from the alleged inconsistencies in affidavit), cert.

5

denied, 528 U.S. 1177 (2000).

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

Franks, 438 U.S. at 171.

### III. ANALYSIS

Defendant argues he "has made a prima facie showing in the trial testimony of a deliberate falsehood or a reckless disregard for the truth in the search warrant affidavits justifying a post[-]trial Franks hearing." Doc. 63 at 3. Specifically, Defendant "respectfully submits that witness Hogan's testimony establishes a prima facie case of deliberate falsehood or reckless disregard for the truth by Detective Shelkey in her affidavit on a point essential to probable cause for the searches, in the absence of which deliberate or reckless falsehoods probable cause would be insufficient." Id. Further, Defendant claims that the "fruits of the searches of the residence and the vehicle of March[ ] 24, 2016 (and particularly of the residence) are essential to the sufficiency of the evidence supporting the convictions on Counts 1–5. Without this seized evidence, the convictions on these Counts would" not be supported by sufficient evidence and Defendant would be entitled to judgments of acquittal. Id. at 5. "In the alternative, at a minimum, post-trial suppression of such evidence would entitle the defendant to a new trial." Id.

The Government argues that Defendant is not entitled to a Franks hearing. Doc. 64 at 5–

10. The Government contends that "Defendant has not made a 'substantial preliminary showing' that Detective Shelkey made a knowing and intentional misstatement or recklessly disregarded the truth in her affidavit." Id. at 7. Further,

> [a]ssuming arguendo, that Detective Shelkey overstated the defendant's involvement in the March 24, 2016 controlled buy by failing to emphasize that he sent two women to deliver the heroin rather than delivering it personally, there was ample evidence in the four corners of the affidavit to support the magistrate's finding of probable cause to search he Lindsay Avenue residence.

Id. at 10. The Government lists the following additional support for the magistrate's finding of probable cause to search the Lindsay Avenue residence:

> (1) that the defendant made arrangements on the phone to sell the confidential informant heroin on that date and told her where to go to conduct the transaction;
> (2) that the defendant was seen leaving the Lindsay Avenue residence just prior to the controlled purchase in the company of two black females who ultimately delivered heroin to the confidential informant;
> (3) that the defendant made similar sales of cocaine and heroin to other informants at the Lindsay Avenue residence within the preceding six months;
> (4) that the defendant made similar sales of cocaine and heroin from his black 2004 BMW displaying Virginia tags VLD-9617 that is registered to him;
> (5) that the informants had seen the defendant in possession of multiple firearms at the Lindsay Avenue residence;
> (6) that the informants had seen the defendant in possession of cutting agents at the Lindsay Avenue residence;
> (7) that the informants had seen the defendant weighing out narcotics on a digital scale at the Lindsay Avenue residence; and
> (8) that the informants had positively identified a photograph of the defendant as the person selling heroin and cocaine out of the Lindsay Avenue residence.

Id. at 11. Finally, the Government argues that Defendant's Post-Trial Motion is untimely as "Federal rule of criminal procedure 12(b)(3) requires that motions to suppress evidence must be made before trial." Id. at 5 (quoting United States v. Wilson, 115 F.3d 1185, 1190 (4th Cir. 1997)).

Defendant's Post-Trial Motion is ineffectual. As noted above, to be entitled to a Franks hearing, a defendant must first "make[ ] a substantial preliminary showing that a false statement

7

knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." Franks, 438 U.S. at 155–56 (quotations omitted). Second, "the false information must be essential to the probable cause determination." Colkley, 899 F.2d at 300. Defendant fails to satisfy either prong.

Defendant fails to satisfy the first prong required for a Franks hearing. Detective Shelkey stated in her affidavit to the state magistrate that "[d]uring this controlled purchase, MOODY and other co-conspirators (two unidentified black females) were observed leaving from 12** Lindsay Avenue Portsmouth VA and surveilled travelling to the pre[-]arranged location and selling the informant heroin." Doc. 63, Ex. 1 at 5. Meanwhile, Ms. Hogan testified that Defendant was not present or selling heroin to her at that same meeting. Doc. 63, Ex. 4 at 17–18. Further, when asked about this discrepancy on cross examination, in an effort to explain the wording and syntax of her affidavit, Detective Shelkey testified that Defendant "was a part of [the] transaction" and "that he was involved in it." Doc. 63, Ex. 3 at 7. Based on the language used in Detective Shelkey's affidavit, it is unclear exactly who was present for the transaction at issue and who was an active participant. What is clear, however, as the Government notes, is that Defendant "agreed to sell the information heroin, accompanied two women to a location at or near the agreed-upon meeting spot, and caused heroin to be delivered to the informant." Doc. 64 at 9. As such, it is evident that Detective Shelkey's affidavit was not designed to mislead the magistrate and cannot be characterized as intentionally false. Thus, Defendant has failed to satisfy the requisite "substantial preliminary showing" that Detective Shelkey intentionally deceived the magistrate, or recklessly disregarded the truth of facts contained in her affidavit. Franks, 438 U.S. at 155–56.

Defendant also fails to satisfy the second prong required for a Franks hearing. Despite

the ambiguities in Detective Shelkey's affidavit regarding Defendant's specific actions related to the controlled drug transaction, ample evidence exists within the affidavit to support the magistrate's finding of probable cause to search the Lindsay Avenue residence. Notably, the Portsmouth Police Department had conducted extensive surveillance of the Lindsay Avenue residence and directed confidential informants to participate in controlled purchases from said residence and from Defendant's 2004 BMW. Doc. 63, Ex. 1 at 5. Also, during the controlled purchases, the confidential informants observed Defendant in possession of heroin, cocaine, multiple firearms, cutting agents, and digital scales. Id. Further, the existence of such supporting evidence renders the "offending" information "not essential to magistrate's probable cause determination." Doc. 64 at 10. As such, Defendant has not satisfied the second prong required for a Franks hearing.

Because Defendant has failed to satisfy either prong of the requisite "dual showing" to entitle Defendant to a Franks hearing, the Court **DENIES** Defendant's Post-Trial Motion. Additionally, because Defendant has failed to satisfy the Franks requirements and Court DENIES Defendant's requested relief, the Court need not reach whether Defendant's Post-Trial Motion is timely.

## IV. CONCLUSION

For the reasons listed above, the Court **DENIES** Defendant's Post-Trial Motion. Doc. 62. The Clerk is **DIRECTED** to deliver a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
June ___, 2017

9